7 N.Y.2d 222 (1959)
Arthur A. Johnson Corporation et al., Respondents,
v.
Indemnity Insurance Company of North America, Appellant.
Court of Appeals of the State of New York.
Argued October 14, 1959.
Decided December 30, 1959.
George J. Conway and George A. Garvey for appellant.
Franklin Nevius and Thomas B. Treacy for respondents.
Judges DESMOND, DYE, FULD and FROESSEL concur with Chief Judge CONWAY; Judge BURKE concurs for affirmance in a separate opinion; Judge VAN VOORHIS dissents in an opinion.
*224 Chief Judge CONWAY.
This case comes to us upon an agreed statement of facts which are essentially that in January, 1947 plaintiffs, who are general construction contractors, contracted with the New York City Board of Transportation to construct platform extensions to stations on the Lexington Avenue Subway. In the construction contract the plaintiffs agreed to indemnify the city against claims by persons, including abutting owners and their tenants, for damage which "* * * may be occasioned by the work of construction, even in cases where such owners, have no legal claim against the City for such injuries or damages". They further agreed that their liability would be absolute and "not dependent upon any question of negligence on * * * [their] part or on the part of * * * [their] agents, servants or employees * * *." Then, *225 defendant insurance carrier issued to the plaintiffs a policy which provided as follows:
"I * * *
COVERAGE B  PROPERTY DAMAGE LIABILITY.
To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."
Item 4 of the declarations of the policy provided as follows:
 "* * *
 Coverages Limits of Liability
 A. * * * * * *
 B. Property Damage $50,000. each accident
 Liability 100,000. aggregate operations.
 * * *."
For an additional premium, the policy further provided:
"CONTRACTUAL LIABILITY AND PROPERTY DAMAGE ENDT. # 1
It is agreed that in consideration of premium hereinafter provided for, such insurance as is afforded by the policy shall also apply to the liability assumed by the insured under Contract for the Extension of Station Platforms at 23rd, 28th and 33rd Streets, Manhattan, Group 12, Lexington-Fourth Avenue Line, I. R. T. Division, New York City Rapid Transit System said contract being executed by and between the named Insured and the City of New York, Board of Transportation, and copies of the Indemnification Clauses set forth therein being on file with the Company."
Later in the year, as part of the job, plaintiffs excavated a trench on Fourth Avenue which extended between 22nd and 23rd Streets in front of premises 300 and 304 Fourth Avenue. Those two buildings, although they are adjoining, are separate so that water in the sub-basement of one would not flow into the sub-basement of the other. They then removed the underground vault walls in front of each building and constructed in their place two entirely separate, temporary cinder block walls, six inches thick, enclosing the front of the sub-basement of each building. On August 26, 1947 a rainfall of unprecedented intensity *226 took place (3.52 inches) and flooded the excavation beyond the capacity of the pumps. At 5:10 P.M., one of the sections of the cinder block wall in front of 300 Fourth Avenue gave way and that sub-basement was flooded, causing property damage to the owner and occupants therein. Subsequently, at 6:00 P.M., the wall protecting 304 Fourth Avenue was breached and similar flood damage occurred. However, the flood in 304 Fourth Avenue was 3.5 feet lower than that in 300 Fourth Avenue. The plaintiffs and the defendant insurer agree that the collapse of the walls was not the result of any negligence on the part of the plaintiffs.
There were several claims and lawsuits brought which were settled for a total well over $50,000. However, the insurer, in reliance on the policy limitation of $50,000 coverage for each accident, paid $50,000 and no more, claiming that there had been only one accident within the meaning of the policy. It is agreed that the defendant insurer's further liability under the policy, if two accidents are involved, is $19,939. The controversy is: "* * * whether upon the foregoing facts there were on August 26, 1947 two accidents involved as claimed by plaintiffs, or one accident involved as claimed by defendant."
The Appellate Division held that more than one accident was involved, and it awarded judgment to the plaintiffs accordingly.
The defendant insurance company contends that there was only one proximate cause (causa causans) of the damage to the several claimants, i.e., the heavy and unprecedented rainfall, and that, thus, there was only one "accident" within the commonly accepted meaning of the word. In advancing this position, the carrier relies upon several cases which take the view in a situation where there are losses to more than one person, that, whether there is more than one "accident" within the meaning of a limitation clause of the type here involved, depends on whether there is one act of negligence constituting the proximate, continuing cause for all of the injuries and damage. (See, e.g., Hyer v. Inter-Insurance Exch., 77 Cal. App. 343 [1926]; Truck Ins. Exch. v. Rohde, 49 Wn. [2d] 465 [1956].) Plaintiffs, in addition to resisting the carrier's assertions concerning coverage of ordinary common-law liability, point to the clause insuring them against the liability which they have assumed in their contract with the city and maintain that since *227 they were being sued on that contract by the many claimants, the concept of proximate causation is not relevant to determine the proper construction of the coverage of the policy. The carrier's reply to this is that the additional obligation incurred by it as insurer in no way affects or changes the concept of "accident" contained in the $50,000 limitation clause.
This is apparently a case of first impression in this State. Neither our research nor that of counsel nor that of the court below has uncovered any New York cases directly in point. This problem is to be distinguished from the multitude of cases in this jurisdiction which have sought to determine whether there has been damage by "accident", as covered by a personal insurance policy. (See, e.g., Lewis v. Ocean Acc. & Guar. Corp., 224 N.Y. 18, 21 [1918]; Smith v. Continental Cas. Co., 259 App. Div. 357 [1st Dept., 1940]), or under the Workmen's Compensation Law (see, e.g., Matter of Woodruff v. Howes Constr. Co., 228 N.Y. 276, 278 [1920]), or under a policy of liability insurance (see, e.g., Floralbell Amusement Corp. v. Standard Sur. & Cas. Co., 256 App. Div. 221 [1st Dept., 1939].) Here, there is no question but that there was damage by "accident". The question is, how many accidents within the meaning of the policy? Of course, in addressing ourselves to this question, our guide is, as both sides agree, especially since there appear no special circumstances, the "* * * reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." (Bird v. St. Paul Fire & Mar. Ins. Co., 224 N.Y. 47, 51 [1918].) Phrased differently, we are not construing a statute, but the words of an insurance policy, and in so doing we must construe the word "accident" as would the ordinary man on the street or ordinary person when he purchases and pays for insurance. (See Abrams v. Great Amer. Ins. Co., 269 N.Y. 90 [1935]; Johnson v. Travelers Ins. Co., 269 N.Y. 401 [1936].)
The authorities in this area of whether, in a given set of circumstances when the damage is to several persons, there is one or more accidents within the meaning of the clause limiting coverage to a certain amount per accident, may be divided into three classes. In one class of cases upon which the carrier heavily relies, the courts utilize the approach that "where * * * one negligent act or omission is the sole proximate *228 cause, or causa causans, there is, as a general rule, but one accident, even though there be several resultant injuries or losses." (Hyer v. Inter-Insurance Exch., 77 Cal. App. 343, 350, supra [2d App. Dist., 1926].) In that case, where the policy was limited to $1,000 for claims arising from one accident, the insured negligently collided with one car forcing that car into a collision with another car and causing an aggregate of $2,000 damage to both. The court held that there was only one accident. (See, also, Truck Ins. Exch. v. Rohde, 49 Wn. [2d] 465, supra [1956], where the insured, driving on the wrong side of the road, hit three oncoming motorcycles in quick succession and the court ruled that there was only one accident within the limitation clause of the policy.)
Another approach is to hold that each person who has suffered a loss has suffered an accident. Thus, the number of accidents is determined by the number of persons damaged. The leading exposition of this doctrine is in South Staffordshire Tramways v. Sickness & Acc. Assur. Assn. ([1891] 1 Q. B. 402 [Court of Appeal]) where several tram passengers were injured in a mishap and made claims upon the insured. The rationale appears to be that, inasmuch as the purpose of the policy is to afford protection against claims for injuries, it is more appropriate to equate "accident" with an "accident to any one claimant". ([1891] 1 Q. B. 405-406.) (See, also, Anchor Cas. Co. v. McCaleb, 178 F.2d 322 [C. A. 5th, 1949].)
Finally, there is the approach, which we consider the soundest, that the term is to be used in its common sense of "an event of an unfortunate character that takes place without one's foresight or expectation * * *." (Definition taken from Matter of Croshier v. Levitt, 5 N Y 2d 259, 269 [1959]; emphasis added.) That is, an unexpected, unfortunate occurrence. One case illustrative of this view is Anchor Cas. Co. v. McCaleb (supra) where an oil well blew up, remained out of control, and continued intermittently for 50 hours to erupt, hurling waste materials upon the property of various neighbors, the victims depending on the direction of the wind. The question was whether there was only one accident within the meaning of the liability insurance policy's limit of $5,000 for each accident. The court deemed the blowing out of the well to be "* * * a series of events, a catastrophe", and observed *229 that: "Numerous accidents were the product of the motivating force and the wind as a supervening force. The eruptions continued intermittently for over two days * * *." Hence, they concluded that there was more than one accident (178 F.2d 324). An example of similar reasoning which reached the opposite result is Saint Paul-Mercury Ind. Co. v. Rutland (225 F.2d 689 [C. A. 5th, 1955]) where the insured truck carrying coverage limited to $5,000 per accident collided with a freight train and damaged the roadbed, 16 cars and their contents, giving rise to claims by the railroad as well as by several shippers, amounting to $30,000. The court noted that people "* * * use the word `accident' to describe the event, no matter how many persons or things are involved" (225 F. 2d, p. 691) and held that there was but one accident. Moreover, they considered the fact that premiums are based upon the risk insured and the potential amounts of liability covered, and decided that: "Such a system of computing rates is simply incompatible with the idea of virtually limitless liability depending solely upon the number of claimants." (225 F. 2d, p. 692.) There are other cases where the courts have selected a similar path such as, for example, to hold a hotel fire which destroyed the property of many guests as one event, and thus one accident under the policy. (See Denham v. La Salle-Madison Hotel Co., 168 F.2d 576 [C. C. A. 7th, 1948].) Or, with the same reasoning but the converse result, the highest court of Tennessee has ruled, in what we consider the case most similar to the instant case, that, where the insured had excavated its two adjoining buildings in order to combine them into one, with the result that they collapsed bringing down their adjoining neighbor on the East, and, where the adjoining building of their neighbor on the West likewise crumbled two days later, the two collapses were separate accidents within the meaning of the limitation clause of the policy (Kuhn's of Brownsville v. Bituminous Cas. Co., 197 Tenn. 60 [1954]). This approach of determining simply whether there was one unfortunate event or occurrence seems to us to be the most practical of the three methods of construction which have been advanced because it corresponds most with what the average person anticipates when he buys insurance and reads the "accident" limitation in the policy. In applying this approach to the agreed statement *230 of facts, we need only point out that it is agreed that, during a heavy rainfall, a protecting wall collapsed under the water pressure and destruction poured into a building. Almost an hour later, another wall gave way and water flooded another building. There is no suggestion that the collapse of the first wall caused the failure of the second. As a matter of fact, the water in the basement of 300 Fourth Avenue could not have flowed into 304 Fourth Avenue. If anything, the breach of the first wall should have somewhat relieved the pressure on the second. In addition, the catastrophe was not the rain  that, in itself, did no harm. It was the breach of the wall letting the rain water in. Furthermore, if the walls were located blocks away from each other on different job sites but subject to the same rainfall, no one could contest that there were two accidents. For these reasons, we conclude that the collapses of separate walls, of separate buildings at separate times, were in fact separate disastrous events and, thus, two different accidents within the meaning of the policy.
We think it worthy of mention that the carrier is not aided by the rationale of those cases which it cites to the effect that, where there is one act of negligence as the proximate continuing cause of all the injuries, there is but one accident. In the instant case, it cannot be said that one would allege but one act of negligence as the proximate cause of the injuries to the two separate properties. Here the proximate cause cannot be said to be the heavy rainfall but separate negligent acts of preparing and constructing separate walls which, for all we know, may have been built at separate times by separate groups of workmen. Again, defeat to the insurer would be manifest under the English theory which counts accidents by counting claimants.
Finally, it should be noted there is no need to pass upon the merits of the plaintiffs' additional argument that the increased coverage which they have purchased for the liability which they had assumed in their contract with the city precludes any consideration of proximate causation in determining the number of accidents. This is so because we find that there was more than one accident within the purview of the policy, as it stood without that extra clause, and that clause which was bought for a premium could not have decreased the insurer's responsibility.
*231 The judgment of the Appellate Division should be affirmed, without costs.
BURKE, J. (concurring).
I do not agree with the interpretation of the liability policy adopted by the majority. If the policy is construed as insuring only against negligence, I believe that in that aspect there was but one "accident".
I concur for affirmance, however, on the ground that the clause incorporated into the policy by an indorsement which insured plaintiff against the liability which it assumed in its contract with the city obliged the insurer to respond and pay all claims sued on under that contract regardless of the number of "accidents".
The insurance company agreed to hold the contractor harmless under this clause against all damages to person or property irrespective of any negligence on his part. Accordingly, it is immaterial to consider what was the proximate cause of the breaking of the walls which would be relevant only in a suit involving common-law liability.
The two collapses of the two separate walls flowed from the acts of construction engaged in by respondent and were hazards insured against under the contractual liability and property damage indorsement of the policy.
As each collapse was a separate event flowing from the hazard of construction for which the contractor was liable, the insurer's liability became complete not only upon the happening of an "accident" but upon the insured's incurring liability to the abutting owners and tenants upon claims arising out of the construction operation.
The judgment should be affirmed.
VAN VOORHIS, J. (dissenting).
The question is whether, under the language of an insurance policy, the destruction by water of property in two separate basements due to a single flood in which 3.52 inches of rainfall occurred in two hours constituted separate accidents. This insurance policy covered $50,000 for "each accident" and $100,000 for "aggregate operations." In my view, this deluge was a single event, like an explosion or fire, and the collapse of these two walls did not constitute separate accidents, within the meaning of the policy, but simply the result of this overwhelming flood. If the two walls had collapsed as *232 the result of one explosion, it was conceded on the argument by counsel for the respondent that it would have been a single event and that the limitation of the $50,000 coverage would have applied. It is not disputed that the power of the water was too great to be withstood, like the air pressures engendered by an explosion. The choice is between our rule and the English rule, which provides that there is a separate event wherever loss is sustained by more than one person (South Staffordshire Tramways Co. v. Sickness & Acc. Assur. Assn., [1891] 1 Q. B. 402). If the judgment appealed from is correct, there will always be more than one event wherever the person or property of more than one is affected. Something analogous to the collapse of these two walls can always be found, and would necessarily occur wherever damage is effected to more than one person. The very infliction of damage in several instances involves multiple events on this theory. There is no essential distinction between the decision by the Appellate Division and the English rule. The judgment appealed from should, in my view, be reversed.
Judgment affirmed.