[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON LIBERTY MUTUAL'S MOTION FOR SUMMARY JUDGMENT (#106)
Summary judgment is sought by defendant, plaintiff's uninsured motorist insurance carrier, claiming that a settlement plaintiff earlier received from one of two tortfeasors effectively eliminates the potential for trial recovery under the policy, for the reason that the amount already in plaintiff's hand exceeds the uninsured motorist coverage.
The court has determined that the carrier's motion must be denied, because the law of apportionment will pertain rather than a pre-trial operation of the set-off mechanism the insurer urges.
The following facts are not in dispute. On or about March 17, 1993, the plaintiff, Martanis was operating a vehicle in an easterly direction on I-95. Traveling in the right lane, his vehicle was struck by that of Oliveria and, seconds later, by another, driven by Jarratt. Plaintiff had uninsured motorist coverage through Liberty Mutual for $200,000 and Oliveria was not insured. Jarratt's vehicle was covered by Allstate[1]
which settled for $450,000.
Martanis commenced this action for uninsured motorist benefits as a result of the collision with Oliveria. Liberty's answer asserted that it was entitled to a set-off in the amount of the $450,000 Allstate settlement.
Liberty seeks summary judgment urging not only that it is entitled to a set off representing the $450,000 settlement, but that such set-off would immediately operate to entirely eliminate potential recovery by plaintiff against Liberty.
Thus, one must consider whether defendant is entitled presently to a set-off, pursuant to § 38a-334-6 (d)(1) of the Regulations of Connecticut State Agencies,[2] or to apportionment, pursuant to the recent Collins v. Colonial Penn Ins. Co., 257 Conn. 718, 778 A.2d 889
(2001). (Later, this opinion will discuss plaintiff's emphasis upon this collision being two "accidents," a ground which may secondarily suggest denial of summary judgment.) CT Page 1691
 I SET-OFF OR COLLINS-BASED APPORTIONMENT
Neither party posited this to be a situation destined for apportionment at trial,[3] but this court believes it is clearly required. However, exposition and resolution of defendant's set-off argument will be undertaken, also.
In the context within which the litigants have framed the issues, both defendant and plaintiff have agreed that defendant is entitled to a `set-off' as to the $450,000 settlement Allstate paid, but they disagree as to whether it would possibly reduce a jury award in the trial yet to come, on the one hand, or operate now so as to erase the $200,000 coverage. Plaintiff has conceded that he can only recover under his own policy if his trial recovery is in excess of $450,000, and that any recovery beyond $450,000 is capped then by the $200,000 policy limit.
To answer Liberty's contention as to whether Liberty's set-off will reduce the plaintiff's coverage limit instantly to zero requires a review of the uninsured motorist statutes, applicable regulations, the legislative policy behind the uninsured motorist statutes, as well as a careful reading of the policy.[4]
General Statutes § 38a-336 provides in relevant part: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles. . . ."[5] Section 38a-336, "reflects the public policy of this state to afford a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the uninsured motorist had maintained an adequate policy of liability insurance. . . . Section 38a-336 (b) also provides, however, that "in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." (Citations omitted.) Bennett v. Automobile Ins. Co. ofHartford, 230 Conn. 795, 800-01, 646 A.2d 806 (1994).
General Statutes § 38a-334 authorizes the insurance commissioner to "adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies. . . . "[6] Pursuant to that authority the insurance commissioner adopted section 38a-334-6 of the Regulations of Connecticut State Agencies which authorizes insurers to CT Page 1692 provide for a setoff against amounts paid from other sources. Section38a-334-6 (d) of the Regulations of Connecticut State Agencies provides that "the policy may provide for the reduction of limits to the extent that damages have been" paid by or on behalf of a liable party.[7]
Trial court authority exists that supports the defendant's argument that a set-off is to be presently applied to reduce the policy limits and does not merely apply as a reduction in the amounts to be paid upon future jury award. Grimotes v. Baker, judicial district of New London at New London, Docket No. 555209 (September 21, 2001, Hendel, J.); Hanz v.Dragone Enterprise, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 350501 (July 27, 2000, Melville, J.) (27 Conn. L. Rptr. 547); see also Caires v. Allstate Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 366040 (October 20, 1998,Lager, J.) (23 Conn.L.Rptr. 319); Rhone v. Allstate Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 366487 (September 30, 1998, DeMayo, S.T.R.) (22 Conn.L.Rptr. 615); Brouker v.Metropolitan Property Cas., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 555971 (May 7, 1998, Lager,J.) (22 Conn.L.Rptr. 157); Kramer v. Travelers Indemnity Co., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 56712 (September 25, 1997, Wagner, J.) (22 Conn.L.Rptr. 416); Kelseyv. Peerless Ins. Co., Superior Court, judicial district of New London at New London, Docket No. 536935 (October 1, 1996, Booth, J.); Pettola v.New Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 366040 (April 3, 1996, Corradino, J.) (16 Conn.L.Rptr. 389);Boyle v. Allstate Ins. Co., Superior Court, judicial district of New London at Norwich, Docket No. 104265 (December 7, 1995, Hurley, J.) (15 Conn.L.Rptr. 492).
These trial court decisions, however, were rendered before our Supreme Court decision in Collins v. Colonial Penn Ins. Co., 257 Conn. 718,778 A.2d 899 (2001).[8] In Collins, the court held that in a case involving multiple tortfeasors, where at least one of them is uninsured, the uninsured motorist carrier is entitled to apportionment pursuant to General Statutes § 52-572h.[9] Id., 742.
In Collins, plaintiff was injured in a three car collision in which one tortfeasor was an unidentified hit and run driver. Plaintiff sued the insured tortfeasor and her own carrier. At trial, defendant uninsured motorist carrier settled prior to the jury rendering a verdict. The insured tortfeasor requested the court to instruct the jury to apportion liability between the insured tortfeasor and uninsured hit-and-run driver. The insured tortfeasor also requested that the trial court grant him a set-off equal to the amount received in settlement in order to prevent the plaintiff from reaping a double recovery. The trial court CT Page 1693 refused both requests. The Connecticut Supreme Court held that the non-settling insured tortfeasor was entitled to a charge on apportionment of damages.[10] Id., 742.
The Collins Court discussed the history of § 52-572h, and its having been enacted to change the law of joint and several liability. Id., 729-31. The legislative policy of § 52-572h is to apportion liability for damages between joint tortfeasors based on the negligence of each and further provides for apportioning liability in the context of settling and non-settling tortfeasors. Id., 730-32. The Court took cognizance of defendant's claim that § 52-572h provides that, although the settled or released person is discharged from all liability for contribution, the award of damages is to be "reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section.'" Id., 731. The court further reasoned that an uninsured motorist carrier generally acts as a surrogate for the uninsured tortfeasor; Id., 732; and that "the relationship between the [uninsured] motorist carrier and the defendant may be viewed as analogous to that of joint tortfeasors, and thus that the general tort rule precluding double recovery from joint tortfeasors would apply." (Internal quotation marks omitted.) Id., 734.
The Collins court concluded that "the legislature, in enacting §§52-572h and 38a-336, did not intend to create a separate law of damages for uninsured motorist claims different from that which exists for traditional negligence awards. An insured, therefor, is legally entitled to recover, under § 38a-334-6 (a), her damages after they properly are apportioned pursuant to the dictates of § 52-572h." (Internal quotation marks omitted.) Id., 742. Thus, as noted, the court concluded that apportionment principles apply in the uninsured and underinsured motorist context.
The Collins court actually set out the permutations which would engender an apportionment approach: (a) plaintiff claims against two tortfeasors and releases or settles with one; (b) plaintiff claims against two tortfeasors and one is underinsured (not a hit-and-run) and settles out; (c) plaintiff claims against two tortfeasors, one identified and uninsured, the second solvent or insured, and plaintiff has no uninsured motorist protection; the financially irresponsible person could be apportioned in, potentially diminishing recovery from the solvent one; (d) finally, an identified tortfeasor's carrier settles; the remaining one need not pay the part of the plaintiff's damages deemed caused by the settling party. Id. At 742-43.
It cannot be so that these scenarios present apportionment circumstances and the case at bar does not. (A) and (d) above each (aside CT Page 1694 from being almost identical) arguably fit here. Even if they did not, the court has been unable to articulate to itself a way to characterize this matter so that it would appear to best be placed outside said quadrangle.
Thus, this court has come to conclude that Collins governs this case, and depending upon where apportioned responsibility is jury-determined to lie, set-off arithmetic may become entirely unnecessary.
The court now must turn to Liberty's contention that its policy establishes its right to use the $450,000 settlement presently to eradicate the potential for future recovery by jury verdict, even one that exceeds $450,000.
"It is the function of the court to construe the provisions of the contract of insurance. . . . Qsp, Inc. v. Aetna Casualty Surety Co.,
supra, 256 Conn. 351. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Imperial Casualty Indemnity Co. v. State, 246 Conn. 313, 324, 714 A.2d 1230 (1998). "The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy." (Bracket in original.) Hertz Corporation v. Federal Insurance Company,245 Conn. 374, 381, 713 A.2d 820 (1998).
"If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." PeerlessIns. Co. v. Gonzalez, 241 Conn. 476, 482, 697 A.2d 680 (1997). "When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result."Industrial Risk Ins. v. Hartford Steam Boiler, 258 Conn. 101, 118,779 A.2d 737 (2001). "It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Pacific Indemnity. Ins. Co. v. Aetna Casualty SuretyCo., 240 Conn. 26, 33 n. 8, 688 A.2d 319 (1997). "The determination of CT Page 1695 whether an insurance policy is ambiguous is a matter of law for the court to decide." Metropolitan Life Ins. Co. v. Aetna Casualty Surety Co.,255 Conn. 295, 305-06, 765 A.2d 891 (2001).
The defendant argues that to allow the plaintiff to collect under his uninsured motorist coverage would allow double recovery.[11] The defendant's statement of law that the plaintiff is prohibited from receiving a double recovery for his injuries is, as far as it goes, correct, because Connecticut courts have long followed the "time honored rule that an injured party is entitled to full recovery only once for the harm suffered. . . ." Vitti v. Allstate Ins. Co., 245 Conn. 169, 186,713 A.2d 1269 (1998). In this case, however, the facts would not represent the existence of a double recovery if the jury were told to apportion the direct singular responsibility of the uninsured tortfeasor. (See again, footnote 10).
The Liberty policy states in its "uninsured motorist coverage" portions, specifically under "Limit of Liability," that "no one will be entitled to receive duplicate payments for the same elements of loss." (Amendment of Policy, Part II, ¶ E) The "Other Insurance" provision of the same "Uninsured Motorist Coverage" portion of the Liberty policy further states that "[i]f there is applicable similar insurance, we will not pay any damages that duplicate any payment made for damages under such similar insurance." (Amendment of Policy, Part II., ¶ F)
The defendant's position has the effect of mistakenly characterizing the plaintiff's $450,000 settlement with Allstate as though it were a full satisfaction for plaintiff's injuries. There is a distinction between a jury award and a settlement. Collins, supra, 257 Conn. at 734. A release or settlement represents a surrender of the plaintiff's cause of action against the settling tortfeasor, whereas, a judgment upon verdict represents full compensation. Gionfriddo v. Gartenhaus Cafe,211 Conn. 67, 73-74 n. 8, 557 A.2d 540 (1989).
The rule prohibiting an injured party from receiving a double recovery is a rule prohibiting litigating the question of damages more than once. Id., 75. In the present case, the $450,000 settlement might be for an amount less than (or greater than) actual damages. Id., 73-74, n. 8. The amount of the settlement represents instead the parties' appraisals of the risks of litigation. Collins, supra, 257 Conn. at 735-36. By settling with Allstate, the plaintiff weighed the certainty of receiving $450,000 in settlement against the risk of receiving a jury award for less or nothing at all. Until the issue of damages has been pronounced upon by a trier of fact, the amount of the plaintiff's damages has not beenlitigated, so the plaintiff receiving a judgment against his uninsured motorist carrier after receiving the $450,000 settlement in this case CT Page 1696 would not be a double recovery as long as a jury finds damages in excess of $450,000.
An additional, subsidiary, reason for allowing the plaintiff to proceed beyond the $450,000 settlement and to claim against his carrier's policy is that it furthers the long standing public policy of encouraging settlements. Allowing the plaintiff to settle with Allstate and proceed beyond may well encourage plaintiffs in other multi-tortfeasor uninsured motorist cases to also settle claims with the insured tortfeasors. This is likely to promote judicial economy, for all that would then remain, in the best scenario, is a single settlement, instead of a trial seeking to determine the respective fault of two operators. At the same time, the policy of preventing plaintiffs from achieving double recoveries is still served by permitting the apportionment of liability should a trial be necessary. Collins, supra, at 735-37; see also § 52-572h (n).
Having set aside for the moment whether a Collins apportionment approach must govern, and determining that policy prohibitions against double recovery are not implicated here, this court feels that summary judgment should be denied on an additional rationale.
The words of the Liberty policy and the facts of this case also suggest that the so-called set-off applies to reduce the amount of a jury award and not, at the outset, the policy limit or coverage. Connecticut State Agencies Regulation § 38a-334-6 (d) permits an insurer to provide in its policy for a set-off against amounts paid to its insured from specific sources and specifies the way in which the insurer may take a set-off, but even though § 38a-334-6 (d) provides for an insurer to take a set-off, the insurer is still bound by the language of its own policy.[12] The Liberty policy provides:
"E. The Limit of Liability provision is replaced by the following:
"Limit of Liability
"However, no one will be entitled to receive duplicate payments for the same elements of loss.
"The limit of liability shall be reduced by all sums:
"1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.
"2. Paid or payable because of the bodily injury under any of the following or similar laws: CT Page 1697
"a. Workers' compensation law; or
"b. disability benefits law."
The Liberty policy also provides in pertinent part:
"II. Uninsured Motorist Coverage:
"D. The Other Insurance provision is replaced by the following:
"OTHER INSURANCE
"If there is other applicable liability insurance, we will not pay for any damages which would duplicate any payment made for damages under similar circumstances. However, any insurance we provide with respect to any vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance."
Review of the provisions of the Liberty policy together indicates that the policy shrinks the defendant's liability to pay damages to its insured for any amounts that would constitute duplicate payments under the policy. The $450,000 settlement does not constitute a "duplicate" payment under the Liberty policy. The plaintiff settled a claim against one tortfeasor only, not both. The uninsured driver is still potentially liable to the plaintiff for damages, and because Liberty is his surrogate, the defendant may still be liable to the plaintiff. See Haynesv. Yale New Haven Hospital, 243 Conn. 17, 25-27, 699 A.2d 964 (1997). In this case, if the law of set-off applied, Liberty would still only be entitled to a $450,000 set-off against the yet-to-occur jury award. If a jury award exceeded $450,000, the defendant would have to pay the excess difference up to its $200,000 policy limit. This is a far cry from defendant's desire to subtract $450,000 from $200,000 at the very outset and suffer no trial.
In addition, the trial court decisions that have interpreted the set-off as applying to reduce the policy limits ab initio and not to reducing the amount of actual ultimate recovery are, in significant number, distinguishable from the present case. First, three of the trial court decisions found by this court were cases where the plaintiff had received workers compensation benefits and then applied for uninsured/underinsured motorist benefits. Kelsey v. Peerless Ins. Co.,
supra, Superior Court, Docket No. 536935; Pettola v. City of New Haven,
supra, 16 Conn.L.Rptr. 389; Boyle v. Allstate Ins. Co., supra,15 Conn.L.Rptr. 492. Second, three cases were single tortfeasor cases.Caires v. Allstate Ins. Co., supra, 23 Conn.L.Rptr. 319; Rhone v.Allstate Ins. Co., supra, 22 Conn.L.Rptr 615; Brouker v. MetropolitanCT Page 1698Property Cas., supra, 22 Conn.L.Rptr. 157. Third, Kramer v. TravelersIndemnity Company, supra, 20 Conn.L.Rptr. 416, involved whether a joint tortfeasor can bring an apportionment complaint against an uninsured motorist carrier, but that case has been effectively overruled by Collinsv. Colonial Penn Ins. Co., supra, 257 Conn. 718 (holding that in a multi tortfeasor uninsured motorist case, the law of apportionment applies).
Finally, the defendant stated in its supplemental brief that Hanz v.Dragone Enterprise, supra, 27 Conn.L.Rptr. 547, and Grimotes v. Baker,
supra, Superior Court, Docket No. 55209; support its argument that, from the very outset, the set-off reduces the plaintiff's policy limits, i.e., potential coverage. In Hanz the plaintiff, a pedestrian, was injured when two cars collided, one of which was driven by an uninsured motorist. The plaintiff settled with the insured tortfeasor for $50,000 and then sued his insurer for $20,000 in uninsured motorist benefits. The court in Hanz held that the insurer was entitled to a set-off in the amount of $50,000 against its policy limits of $20,000. which, of course, eliminated plaintiff's uninsured motorist coverage and prevented a trial.
The court in Hanz stated that "`[a]n insured may not recover double payment of damages under overlapping insurance coverage'. . . ." Id., quoting Buell v. American Universal Ins. Co., 224 Conn. 766, 775,671 A.2d 262 (1993). The Hanz court further stated "`that an insurer may limit its liability by deducting a settlement payment from the damages owed to its insured,'" quoting Buell at 775. Apparently, the Hanz court felt that to permit the plaintiff to recover would have given him a classically impermissible double recovery.
This court disagrees with the holding in Hanz for two reasons. First, the language the Hanz court quoted from Buell does not mandate that the set-off is to be used to reduce the insurer's coverage limits. The Buell
court's holding was premised on its finding that the insured in that case would be "provide[d] a windfall by permitting duplicate payment for the same injury." Buell, supra, 224 Conn. 775. In addition, the Hanz court narrowly construed the Buell statement that an insurer may limit its liability by deducting a settlement payment from the damages owed to its insured." Id.
This anti-windfall language might be construed in ways consistent with either Liberty's contentions or the conclusions of this court. This court concludes, however, that, if the set-of approach were to be utilized (instead of the Collins apportionment route) the more reasoned interpretation of the above Buell language is one which has a $450,000 set-off apply to a (future) verdict. Allowing an immediate erasure of potential exposure is overkill in the name of preventing double recovery, CT Page 1699 when such duplicity never occurs if verdict exceeds $450,000 and Liberty is only required to pay the excess. None of those "excess" dollars "duplicate" any of the first four hundred and fifty thousand dollars. This, of course, presumes the unlikely (or incorrect) utilization of a non-apportionment or non-Collins approach.
The defendant cites Grimotes v. Baker, supra, as supporting its argument that set-off applies to its policy limit ab initio. InGrimotes, the plaintiff was injured in a three car collision with an insured and an uninsured tortfeasor. The plaintiff settled with the insured tortfeasor for $45,000 and the case proceeded to trial. The jury returned a plaintiff's verdict for 162,854.95. The uninsured motorist carrier filed a motion to reduce the verdict. The Grimotes court held that the $45,000 settlement applied against the uninsured motorist carrier's policy limit of $100,000. The court then reduced the jury verdict to $55,000.
In support of its decision, the Grimotes court cited Vitti v. AllstateIns. Co., supra, 245 Conn. 172-73; Lumbermens Mutual Casualty Co. v.Huntley, 223 Conn. 22, 30, 610 A.2d 1292 (1992); Wilson v. Security Ins.Co., 213 Conn. 532, 538, 569 A.2d 40, cert. denied, 498 U.S. 814 (1991). Those cases are distinguishable from Grimotes, in that they involved single uninsured/underinsured tortfeasors in a variety of circumstances.
This court disagrees with the Grimotes court's application of those cases to a joint tortfeasor case where one of the tortfeasors is uninsured. First, the issue in Lumbermen Mutual was whether the underinsured motorist carrier could take a credit for a personal payment made by the single tortfeasor to the plaintiff. Id., 25-26. Second, the issue in Wilson was whether the uninsured motorist carrier could take credit for worker's compensation benefits plaintiff had received.
Finally, the issue in Vitti, supra. was whether the uninsured motorist carrier in that case could take a credit for the value of the social security disability benefits paid or payable to its insured. In Vitti,
claimant was injured by a single underinsured tortfeasor. The claimant exhausted by settlement the $20,000 limits of the liability policy, and then moved for underinsured motorist carrier for undersinsured motorist benefits. The underinsured motorist policy limits were $200,000. The carrier then brought a declaratory judgment action to determine if it could also take a credit for the value of the social security disability payments paid to its insured. The Vitti court held that it could. Id.,245 Conn. at 194-95.[13]
 Vitti stated that "[t]he purpose of [§ 38a-336] is to compensate an injured party to the same extent as he would have been if he had been CT Page 1700 injured by a motorist carrying liability insurance equal to the [uninsured motorist] coverage carried by the insured." (Brackets in original; emphasis in the original; internal quotation marks omitted.) Id., 189. In addition, Vitti held that the set-off "furthers . . . the policy objective of adhering to the time honored rule that an injured party is entitled to full recovery only once for the harm suffered." (Internal quotation marks omitted.) Id., 186.
Thus, Vitti permitted the insurer a set-off for the $20,000 settlementand for the social security payments, thereby satisfying the twin goals the case describes and which are set out above. It protected that claimant to the same extent as if the underinsured tortfeasor carried liability insurance equal to the claimant's insurance, because the claimant could in no event recover an amount greater than the policy limits of his uninsured/underinsured motorist policy against a single tortfeasor. Second, it prevented the plaintiff from receiving duplicate payments for the same injury, because to have received the $20,000 settlement and social security benefits for his injuries and then to receive the full $200,000 benefit of his underinsured motorist policy in that case would have amounted, arguably, to duplicate payment for the same injuries.
In a two tortfeasor case, however, where one is uninsured, to allow the uninsured motorist carrier to set-off the amount of prior settlement would seem to be incorrect. Permitting the setoff of the amount prior received to reduce policy limits before any amount is formally adjudicated, would, in the joint tortfeasor context, transform the situation from there being two joint tortfeasors, each potentially liable to the plaintiff', to a setting akin to there being but one, an untoward or mistaken result.[14] The purpose of the uninsured/underinsured motorist statutes is to protect the plaintiff to the same extent as if the tortfeasor had carried liability insurance equal to claimant's uninsured motorist coverage. See Id., 189.
Therefore, the Grimotes court may well have improperly applied the holding of Vitti to a dual tortfeasor situation.[15] Were there one tortfeasor, this court would agree with the Grimote result because the plaintiff in such a case would only be able to collect against his uninsured motorist insurance carrier for an amount up to his policy limits of $100,000. But with two tortfeasors, an uninsured motorist carrier acts as a surrogate for another, a second "defendant," the uninsured driver; Collins, supra, 257 Conn. 733; Haynes v. Yale New HavenHospital, supra, 243 Conn. 25-27. In a joint tortfeasor case, if the plaintiff settles with one and obtains judgment against the other, the remaining tortfeasor's insurer would still have to pay any judgment up to that tortfeasor's policy limits, because settling with the one tortfeasor CT Page 1701 would not release the remaining one from liability. As noted, therefore, (see footnote 14) the Grimotes court may have incorrectly applied the holding of Vitti.[16]
If the uninsured tortfeasor in this case had carried liability insurance equal to the $200,000 uninsured motorist coverage carried by the plaintiff, in a Collins-free world, the fact that the plaintiff had settled with Allstate for $450,000 would not deny him a potential recovery against the remaining tortfeasor, simply because the other tortfeasor carried liability insurance. It would thwart the case-determined purpose of the statutes to permit the defendant in the above hypothetical pose to set-off the proceeds from Allstate's settlement against his policy limits, for to do so would liken the situation to one in which the plaintiff was struck by one insured tortfeasor, instead of two. Collins instructs that we envision a surrogacy, and thus we have two "tortfeasors," not a distinctly labeled pair, "insured" and "uninsured."
For all of the foregoing reasons, this court holds that the law of apportionment (C.G.S. § 52-572h), as per Collins, applies to the facts of this case. Further, even if notions of set-off applied, this court holds that pursuant to the language of the defendant's own policy, and pre-Collins law, the $450,000 set-off would apply to any ultimate jury award and not preliminarily to the policy limits.
 II NUMBER OF ACCIDENTS
The meaning of the word "accident" as used in the Liberty policy has been put into contention before the court. If there were only one accident then there would be apportionment of damages between the uninsured motorist carrier and the settled tortfeasor. If there were two accidents, however, there might not be apportionment or set-off available to the carrier. That is, the matter would take on the cast of separate trials consolidated. Each vehicle would be separately judged negligent or not. Damage partitioning would also be individualized, possibly using the approximation method described in Card v. State, 57 Conn. App. 134,747 A.2d 32 (2000).[17]
The plaintiff argues in his last brief that two accidents occurred in the three car collision. Specifically, plaintiff argues that there was first an accident with the uninsured vehicle and then, approximately five seconds later, a second in which the Allstate-insured vehicle struck. The defendant posits only one accident. CT Page 1702
To address this issue one might do well to weigh whether an interpretation of the word as used in the Liberty policy renders it susceptible to being other than an issue of fact. Nowhere is the word "accident" defined in the Liberty policy, so this court has undertaken to determine what the word is understood to mean by the average reasonable policy holder. Pacific Indemnity. Ins. Co. v. Aetna Casualty SuretyCo., 240 Conn. 26, 33 n. 8, 688 A.2d 319 (1997).
The Connecticut Supreme court recently addressed the definition of the word "occurrence" in an insurance policy. In Metropolitan Life Ins. Co.v. Aetna Casualty Surety Co., 255 Conn. 295 (2001), the court held that a single act of negligence was not the cause of the injuries suffered by 200,000 claimants for asbestos exposure, and that therefore, there were multiple occurrences as defined by the policies. Id., 298.[18]
The relevant insurance policies did not define "occurrence." Because Connecticut has very little case law addressing the numbers of occurrences for insurance purposes, the Court analyzed the case law from other jurisdictions. Id., 314.[19] The court noted that other jurisdictions in deciding the number of "occurrences" determined that the words "occurrence" and "accident" are used interchangeably and thus there was no practical difference between the words. Id., 307 n. 14.
The Metropolitan court noted that New York courts interpreting the word "occurrence" in insurance policies have used the event test. Id., 315. The New York Court of Appeals adopted the event test in Arthur A. JohnsonCorp. v. Indemnity Ins. Co., 7 N.Y.2d 222, 227, 164 N.E.2d 704,196 N.Y.S.2d 678 (1959).
In Johnson, the plaintiff, a construction contractor, had contracted with the City to make subway platform extensions. An insurer issued plaintiff a liability policy with a limit of $50,000 per accident. The plaintiff dug a trench in front of two buildings and removed the underground vault walls that enclosed the front of the sub-basement. The plaintiff then built two entirely separate cinder block walls in front of the sub-basements of each building. Rainfall of unexpected intensity flooded the excavation in front of both buildings. One hour apart, the basements were flooded when each wall was breached. If there was one accident, the plaintiff was limited to recovering $50,000 for both events, but if there were two, he could recover up to $50,000 for each.
The Court of Appeals noted that there was a split of authority in other jurisdictions. Id., 227. The court then analyzed the causation, effect and event tests. The court adopted the event test, and reasoned that it was the soundest approach, because an accident is "an event of an unfortunate character that takes place without one's foresight or CT Page 1703 expectation. . . ." (Emphasis in the original.) Id., 228. The court also held that the lay person ". . . uses the word "accident' to describe the event, no matter how many people or things are involved." (Emphasis in the original) Id., 229. The court then adopted the unfortunate event test because it "correspond[ed] most with what the average person anticipates when he buys insurance and reads the "accident' limitation." Id. Applying the event test, the Court found two "accidents". Id., 230.
In Hartford Acc. Ind. v. Weslowski, 33 N.Y.2d 169, 173, 305 N.E.2d 907,350 N.Y.S.2d 895 (1973), the Court of Appeals held a three car collision to be one occurrence. Id., 173.[20] There, the southbound tortfeasor sideswiped a northbound vehicle and then traveled 130 feet and collided head on with another northbound car. The tortfeasor's insurer made a single $20,000 offer to cover both plaintiffs. This amount was the insurer's liability limit "per occurrence." The plaintiffs rejected the offer, claiming two occurrences.
The carrier sought a declaratory judgment that there was only one "occurrence" as defined by the policy. The trial court denied relief and held there was an issue of material fact.[21] If there was only one "occurrence," plaintiffs would be limited to a $20,000 recovery, but if there were two, plaintiffs could collectively recover up to $40,000. TheWeslowski court held that there had been one occurrence, and relied on two factors. Id., 173. First, it noted that the two collisions occurred but an instant apart, unlike Johnson facts in which the collapses occurred about an hour apart. Second, that "[t]he continuum between the two impacts was unbroken, with no intervening agent or operative factor." Id. The Weslowski court concluded that "in common understanding and parlance there was but a single, inseparable accident." Id.
Our Supreme Court's Metropolitan decision, relying on the reasoning inJohnson Corp. and Weslowski, reasoned that it would use the "event" test in determining the number of occurrences. Metropolitan, supra,255 Conn. 316. The court held that "the exposure of asbestos constitute[d] several occurrences." Id., 316-17.
Applying Metropolitan here, this court believes that a question of fact exists as to whether there were one or two accidents. Plaintiff was apparently in a single two car collision and then a brief interval later another car rear ended the plaintiffs. The plaintiff alleges the interval to be five seconds. The present case is arguably distinguishable fromWeslowski because here plaintiff had his first collision with Oliveria, then allegedly both cars came to rest and five seconds later the Jarratt vehicle struck plaintiff. Whether there was a break in the continuum in the alleged five second interval between the two collisions is a question of fact for the trier.[22] (The tortfeasor in Weslowski, supra, hit two CT Page 1704 victims without surcease; here, the scene apparently freezes momentarily until a third vehicle "joins" them.)
It is thus possible that there were two accidents for liability limitation purposes, a likely question of fact for the jury. Because whether there was one or two accidents is a material fact that would make a difference in the outcome, Liberty's motion for summary judgment should be denied on this rationale also.
 III CONCLUSION
The court denies the defendant's motion for summary judgment for three reasons. First, the defendant Liberty is entitled to apportionment and not a set-off. Because apportionment applies in multiple tortfeasor cases where at least some of the tortfeasors are uninsured, the question of whether the defendant is entitled to a set-off for the $450,000 settlement paid on behalf of Jarratt is not applicable to this case.
Second, were this Collins-based rationale in any way misapplied, Liberty's policy fails to mandate set off pre-trial and garners no support in our law for a preliminary reduction of coverage.
Third, because there is a question of fact as to whether there was one or two accidents, a question of material fact exists inappropriate for disposition on a motion for summary judgment.
Nadeau, J.