*National Liability & Fire Insurance Co. v. Itzkowitz*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of September, two thousand fifteen.

PRESENT:
>             ROBERT A. KATZMANN,
>                         *Chief Judge*,
>             PETER W. HALL,
>             RAYMOND J. LOHIER, JR.,
>                         *Circuit Judges*.

---

NATIONAL LIABILITY & FIRE INSURANCE COMPANY,

>       *Plaintiff – Counter-Defendant – Appellant*,

>             v.                                        No. 14-3651-cv

AARON ITZKOWITZ, BENJAMIN ITZKOWITZ, MAYER ITZKOWITZ, YEHUDA ITZKOWITZ, JOSEPH ITZKOWITZ, infants by their Mother and Natural Guardian, Sheron Itzkowitz, and SHERON ITZKOWITZ, individually,

>       *Defendants – Counter-Claimants – Appellees*,

ASHER COMPTON, MOSHE COMPTON,

ADINA COMPTON, infants by their Mother and
Natural Guardian, Bleeme Compton, and BLEEME
COMPTON, individually, AVROHOM
HERSHKOWITZ, an infant by his Father and
Natural Guardian, Yosef Hershkowitz, and YOSEF
HERSHKOWITZ, individually, THE NEW YORK
STATE THRUWAY AUTHORITY
CORPORATION, VILLAGER CONSTRUCTION,
INCORPORATED, MAX ITZKOWITZ, YOSEF
D. COMPTON, MADISON TITLE AGENCY,
LLC,

     *Defendants – Appellees*,

AMY LYNN SIMON, DBA Stoney Ridge Top
Soil, AMY L. SIMON-HOEY, JOHN S. HOEY,

     *Defendants*.[*]

---

For Plaintiff – Counter-Defendant – Appellant:

     S. DWIGHT STEPHENS (Ignatius John Melito, Michael Frank
     Panayotou, *on the brief*), Melito & Adolfsen P.C., New York, NY.

For Defendants – Counter-Claimants – Appellees:

     IRA S. LIPSIUS, Lipsius-BenHaim Law, LLP, Kew Gardens, NY.

For Defendants – Appellees Yosef D. Compton,
Madison Title Agency, LLC:

     ROSA M. FEENEY, Lewis Johs Avallone & Aviles, LLP, Islandia,
     NY.

For Defendant – Appellee New York State Thruway
Authority Corporation:

     JAMES ANDREW KENT, Senior Counsel to the Solicitor General
     (Barbara D. Underwood, Solicitor General, Anisha S. Dasgupta,

---

[*] The Clerk of the Court is directed to amend the caption to conform to the above.

Deputy Solicitor General), *for* Eric T. Schneiderman, Attorney
General of the State of New York, New York, NY.

Appeal from the United States District Court for the Eastern District of New York (Chen, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant National Liability & Fire Insurance Company ("National") appeals from a final judgment entered on September 8, 2014, by the United States District Court for the Eastern District of New York (Chen, *J.*), which granted the defendants' motion for summary judgment. The question on appeal is whether the district court erred in determining that a series of events occurring on Interstate 90 constituted three separate "accidents" for the purposes of the National insurance policy at issue. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* a district court's grant of summary judgment, *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), as well as its interpretation of contracts, including insurance agreements, *see Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). Our interpretation of the insurance policy is governed by New York law.

The policy at issue provides in relevant part:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages . . . resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations. All "bodily injury" [and] "property damage" . . . resulting from continuous or

3

> repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

J.A. 199. Additionally, the definitions section of the policy defines an accident to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" J.A. 203.

Although the parties dispute the exact chronology of the events at issue, it is undisputed that the relevant series of events began when a dump box attached to a dump truck struck and damaged an overpass owned by the Defendant-Appellee New York State Thruway Authority. After hitting the overpass, the dump box separated from the truck and landed in the right lane of the highway. Between thirty seconds and five minutes later, the vehicle occupied by the "Itzkowitz claimants" (driver Max Itzkowitz and passengers Aaron, Benjamin, Mayer, Yehuda, Joseph, and Sheron Itzkowitz) struck the detached dump box. And then, at some point between a few seconds and twenty minutes later, the vehicle occupied by the "Compton-Hershkowitz claimants" (driver Yosef Compton and passengers Asher, Moshe, Adina, and Bleeme Compton, as well as Avrohom and Yosef Hershkowitz) struck the same detached dump box. National argues that this series of events constituted one accident, or at most two separate accidents, under the policy. The defendants disagree, arguing that the district court correctly determined that three accidents occurred.

Under New York law, "absent policy language indicating an intent to aggregate separate incidents into a single occurrence, the unfortunate event test should be applied to determine how occurrences are categorized for insurance coverage purposes." *Roman Catholic Diocese v. Nat'l*

4

*Union Fire Ins. Co.*, 991 N.E.2d 666, 672 (N.Y. 2013) (plurality opinion).[1] The unfortunate

event test, in turn, involves a two-part inquiry. First, we identify the "operative incident . . .

giving rise to liability in this factual context." *Appalachian Ins. Co. v. Gen. Elec. Co.*

("*Appalachian*"), 863 N.E.2d 994, 1000 (N.Y. 2007). Second, after identifying the operative

incident or incidents, we consider "whether there is a close temporal and spatial relationship

between the incidents giving rise to injury or loss, and whether the incidents can be viewed as

part of the same causal continuum, without intervening agents or factors." *Id.* at 999.

Here, as a threshold matter, the unfortunate event test applies. National suggests that the

policy language providing that "[a]ll 'bodily injury' [and] 'property damage' . . . resulting from

continuous or repeated exposure to substantially the same conditions will be considered as

resulting from one 'accident,'" J.A. 199, evinces "an intent to aggregate separate accidents into a

single occurrence," *Roman Catholic Diocese*, 991 N.E.2d at 672. But both this Court and the

New York Court of Appeals have previously applied the unfortunate event test in the presence of

similar language, determining that the language does not evince an intent to aggregate incidents.

*See, e.g.*, *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1213–14 (2d Cir.

1995) ("continuous or repeated exposure to conditions"); *Roman Catholic Diocese*, 991 N.E.2d

at 672 ("continuous or repeated exposure to substantially the same general harmful conditions");

*Appalachian*, 863 N.E.2d at 996 ("continuous or repeated exposure to conditions").

---

[1] In interpreting insurance policies, the New York Court of Appeals has found little
distinction between the terms "occurrence" and "accident." *See Hartford Accident & Indem. Co.
v. Wesolowski*, 305 N.E.2d 907, 910 (N.Y. 1973).

Applying the unfortunate event test, we conclude that the district court did not err in granting summary judgment to the defendants and determining that three separate accidents occurred for purposes of the policy at issue. While the parties dispute a number of facts, particularly the relative timing of events, none of these disputes is material. Under any version of the facts, including one that minimizes the temporal gap between the three incidents, we conclude that the district court properly determined that there were three accidents. The remainder of our decision therefore assumes *arguendo* that National has proved that "thirty seconds" elapsed between the first and second incidents, J.A. 349, and that "a few seconds" elapsed between the second and third incidents, J.A. 879; *see also id.* at 338–41.

We first identify the "operative incident . . . giving rise to liability in this factual context." *Appalachian*, 863 N.E.2d at 1000. *Appalachian* is instructive on this point. In that case, the New York Court of Appeals cautioned: "Common causation is pertinent once the incident—the fulcrum of our analysis—is identified, but the cause should not be conflated with the incident." *Id.* at 999. It then identified as the operative incident each individual's exposure to asbestos. *Id.* at 1000. Just as each individual's exposure to asbestos constituted a separate operative incident in *Appalachian*, each collision in this case was a separate operative incident.

We then decide whether the operative incidents are nevertheless part of the same accident by examining whether the incidents share temporal and spatial proximity and are part of the same "causal continuum." *Id.* at 999. Although New York courts have not applied the unfortunate event test to the fact pattern here, we "construe and apply [New York] law as we believe the state's highest court would." *City of Johnstown v. Bankers Standard Ins. Co.*, 877

6

F.2d 1146, 1153 (2d Cir. 1989). We adopt a "practical" approach, as the New York Court of Appeals instructs. *See Arthur A. Johnson Corp. v. Indem. Ins. Co.*, 164 N.E.2d 704, 708 (N.Y. 1959).

First, regarding temporal proximity, several New York Court of Appeals decisions shed light on the role timing plays in the unfortunate event test. In *Hartford Accident & Indemnity Co. v. Wesolowski*, for example, a southbound car sideswiped and ricocheted off a northbound car before striking another northbound car "but an instant" later. 305 N.E.2d 907, 910 (N.Y. 1973). Emphasizing the near instantaneous timing between the two collisions, the New York Court of Appeals found "a single, inseparable 'three-car accident.'" *Id.* In contrast, in *Arthur A. Johnson Corp.*, the New York Court of Appeals determined that the flood-caused collapses of two separate walls in adjacent buildings were not temporally proximate when they occurred "[a]lmost an hour" apart. 164 N.E.2d at 708.

We believe the New York Court of Appeals would find it arbitrary to draw a hard line at any particular number of seconds or minutes that must elapse before two incidents are distinct accidents. Instead, we consider whether the relative timing of the various incidents played a role in causing any of the incidents.[2] Here, no evidence in the record supports a reasonable inference that the relative timing of any of the incidents played a role in causing the events to unfold as they did. No evidence in the record suggests that the short timespan between the dump box's collision with the overpass and the Itzkowitz vehicle's collision with the dump box played any role in the Itzkowitz vehicle's collision with the dump box. As for the temporal gap of at least "a

---

[2] This inquiry overlaps to some extent with the causal continuum analysis.

7

few seconds" between the Itzkowitz and Compton-Hershkowitz vehicles' collisions with the dump box, there is also no indication in the record that timing played a role in the two incidents. For example, there is no indication that the Itzkowitz vehicle's collision in any way distracted or limited the reaction time of Yosef Compton, the Compton-Hershkowitz vehicle's driver. Even a few seconds on the highway provides ample opportunity for a vehicle to avoid a collision, and National presents no evidence suggesting that timing might have played a role in causing any of the collisions. In sum, although the incidents occurred close in time, nothing suggests that the narrow timespan between each incident played a role in causing any of the other incidents.

Second, the spatial proximity of the events presents a closer question. The first and second incidents are distinct because they occurred in different locations: The first involved the elevated dump box striking the overpass, whereas the second involved the Itzkowitz vehicle colliding with the stationary dump box farther down the road. The second and third incidents, however, are spatially proximate. The collisions occurred in virtually identical spots on the highway and involved the same dump box. But the spatial proximity of the second and third incidents is not necessarily outcome-determinative. The unfortunate event test does not dictate that separate incidents are part of the same accident if they meet any one of three criteria— spatial proximity, temporal proximity, or occurrence in a causal continuum. Rather, the test reflects a "common sense" balancing of the three elements. *Id.* at 707.

We therefore turn to consideration of the third element: whether the incidents are part of the same causal continuum. The three incidents here share a common origin: the initial negligence that caused the dump truck's collision with the overpass. But New York case law

8

suggests that common causation, while relevant to our inquiry, is insufficient to aggregate incidents into one accident. *See, e.g.*, *id.* at 706–07 (rejecting a "sole proximate cause" test). Instead, we look to whether there was an "unbroken" continuum between the events. *Wesolowski*, 305 N.E.2d at 910 ("The continuum between the two impacts was unbroken, with no intervening agent or operative factor."). To be part of the same accident, the operative incidents must be part of the same causal chain. Once an incident occurs and that incident does not then cause further injury, the causal chain is broken.

Here, the first incident involved the elevated dump box striking the overpass, separating from the dump truck, and landing in the road. That incident was not responsible for the second and third incidents. For example, no one suggests that the first incident weakened the overpass's structure in a way that caused further injury. Furthermore, even though the collision with the overpass caused the dump box to fall off the truck, the dump box did not immediately cause further damage, unlike the chain-reaction accident that occurred in *Wesolowski*. *See id.* at 909. Rather, the dump box fell off the truck, slid down the road, and then came to a rest in the right lane. Then, after thirty seconds passed, the Itzkowitz vehicle struck the dump box. When the Itzkowitz vehicle collided with the dump box, a second causal chain started, and this chain was distinct from the one that caused the damage to the overpass. Then, the Compton-Hershkowitz vehicle struck the dump box, and this collision was unrelated to the preceding collision involving the Itzkowitz vehicle. We would be facing a different set of facts if the third incident involving the Compton-Hershkowitz claimants occurred because of the Itzkowitz collision; if, for example, the Itzkowitz vehicle had ricocheted off the dump box before hitting the Compton-Hershkowitz

vehicle. There might then have been an unbroken chain between the second and third collisions. But that is not what the record indicates. The second and third incidents were therefore not part of the same unbroken continuum.

Applying the unfortunate event test, we hold that three separate accidents occurred for purposes of the National policy. The damage to the overpass was not temporally or spatially proximate to the Itzkowitz vehicle's collision with the dump box, and the events were part of distinct causal chains. Additionally, even though there was spatial proximity between the second and third incidents, they too were distinct accidents, both because the second incident did not play a role in causing the third and because the relative timing between the two incidents played no role in the third incident's occurrence.

For the reasons stated herein, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10